Thank you, Your Honor. The issue, Your Honor, today is that this sentence is unreasonable, whether it's unreasonable, for two reasons. And I think I want to talk about this at the onset. Not only the procedural problems, but as an independent matter, this sentence is unreasonable because it's lost its moorings here. We have a sentence that is 187 months above the top end with no real justification. There's not an articulation in the record why that was necessary. Well, factually alone, you have some pretty, you know, we see a lot of different types of cases and we have throughout the years, but this is not an unaggravated situation. So, plus the fact of, you know, I guess, well, I guess primarily you've got the vulnerable victim issue and then there's the prior juvenile adjudication. And then whether 480 months is substantially unreasonable. I think, I mean, the facts are not good for you. And I understand that, Your Honor, and I think that's why I want to talk about the fact that as an independent matter, this sentence isn't justified. I mean, I'm going into territory like the Court's recent decision in Rassam. There should be a clear independent look here. I recognize that there are aggravating factors here. I was in the sentencing hearing the day this sentence was imposed. And it was a difficult situation. The mood was not good. We had a packed courtroom, parents present. It was emotionally charged. Insofar as the Court itself is concerned, I have the utmost respect for Judge Malloy. But I think he departed here in a manner from consistent procedures that we recognized that resulted in a sentence that is just unpalatable here. Well, if on the vulnerable victim, now my understanding on your argument here, obviously it's the mistake that you're alleging is that he's comparing her vulnerability to the population at large as opposed to other 12-year-olds. Well, I think that's part of it. But, you know, some of this, Your Honor, is pretty unwieldy. I mean, it's all nice and fine to set things down in writing in the application notes and to talk about how these two things should work in conjunction with the other. Now I'm speaking directly to the undue influence enhancement of two points over and against or together with, maybe I should say, the vulnerable victim enhancement from Chapter 3. If you read the application notes, in the end, those things get conflated. The government wants to set them out, and I think did a good job in their papers in making this claim. But you can see through it when you apply some fine reasoning to it. Well, but I guess that, okay, it's a 12-year-old victim, so it's not even, I mean, it's an extended set of sexual acts and they're aggravated situations. But the district court statement that the victim was precocious, but, and you, I think you both take a different tack on that. And you latch on to that, that somehow the fact that she's precocious makes her less vulnerable. But the counter argument to that is, isn't precociousness in a 12-year-old usually a sign of vulnerability, not a sign of maturity? I mean, it's pretty, you can't, I mean, a 12-year-old that, she's not the normal 12-year-old, because the normal 12-year-old certainly doesn't come to life with having had all the experience that she had. But I think the argument that, against you, is that because of everything that's already happened to her, she makes herself a more likely victim of prey than, say, a 12-year-old that's been more sheltered and, you know, I mean, this gal is a walking victim. Well, Your Honor, I'm not so sure what Your Honor is suggesting, respectfully, that she's been subjected to. Well, she had already had sex with older people, right? I understand that. And hopefully most 12-year-olds haven't. Well, that may seem something like Your Honor could divine intuitively. However, there's nothing statistically in this record that talks about that. In fact, one could likewise intuit that sex is rampant in the ranks of younger people, that drug use is rampant in the ranks of younger people, and I think that has to be so. I'm a father and a grandfather. I know what these young people are up against. But the bottom line for us is Your Honor. These are the people that are the most vulnerable. These are the people that, as a predator that you go for, that wants drugs, that, you know, will do anything for drugs. Because, what, in the phone conversation he tells her that he's a registered sex offender, he'll give her drugs, and, you know, she goes and meets him. Well, I understand that, but none of that conduct in the end ever figures into the analysis here. There is a certain degree of autonomy that this youngster exhibits here in this record. To begin with, she goes into the adult chat room. I mean, let's talk about the consequences of social media. She goes into an adult chat room and represents that she's an adult. That's how she meets the individual in the first place. But she ends up telling him that she's only 12 before she meets with him. That turns out to be so. Before she actually departs from Wyoming, there's a discussion, and she does tell this defendant. So he knew it all along. So he knows when she's coming that she's 12 years old. That she's bored, she wants marijuana, she's from a broken home, and she's been very active in the adult sex chat room. But, Your Honor, I'm not so sure that there's really any evidentiary need to the fact that she's from a broken home. She had a loving relationship with her parents. Her parents were on it. They were the people that ran her down. But found her four days later. Exactly. And monitored the cell phones through the friends and so on. Made their way to Missoula and contacted the authorities. Weren't they divorced? They were. They had been apparently recently divorced. There wasn't anything real extensive in the record about that, but they had been divorced. And did Nilsen know all these things? That she participated in an online adult sex site, had been sexually active in the past, was bored, wanted drugs, was from a broken home? No. He didn't know hardly any of that, Your Honor. There's nothing to support the record that says that he knew those things. No. So what you're really arguing is that she's a typical man at victim and that the enhancement more than took care of that. No. Yeah. I don't know I want to talk about typicality. I think that that's hard to master here, Your Honor. But I will agree with Your Honor's last statement, the latter part of the statement, that this guideline as calculated and configured goes out of its way to take into account all manner of enhancement activity that can be factored into the guideline. This individual suffered each and every enhancement. There were four or five, maybe six, objections to the enhancements. Let me ask you, do you concede that he qualifies as a repeat sex offender under U.S.S.G. Section 4B.1.5, subsection B? Subsection B, analytically, I think if it went back, he could qualify for that enhancement, yes. But it puts him at a different place on the chart, and I want to emphasize that fact.  His criminal history category would not change if he were awarded the enhancement under subpart B of that Chapter 4 enhancement. Let me just ask you this, just to sort of figure this in my mind. If we affirm the district court, I'm not saying we're going to, I'm just saying if. This is a hypothetical. Judges love those. You know that. Okay. That if we affirm the district court's application under the Vulnerable Victim Adjustment, is an erroneous enhancement under 4B.5, subsection A, harmless? No. And why not? And the reason is because they function in a different fashion each. One requires a boost in the criminal history category. The other does not. Couldn't he still get the 480 months? Well, in theory he could get the 480 months, but my argument here is that if he doesn't suffer the boost in the criminal history category, it's more difficult to move across that chart from a criminal history Category 1 to the 480, notwithstanding the fact that the guideline ranges may be the same. Well, I guess in terms of if you were to establish that there were an error, we still have to look to whether it's harmless. And it seems to me that this sentencing was fairly holistic in considering the whole thing. And if the judge could get the 480 months if we affirmed the vulnerable victim but not the other, wouldn't it just be an act of futility to send it back? Because it sounds to me like this is what the judge thinks this guy deserves. Well, I understand it may be what the judge thought he deserved, but it wasn't what he deserved, Your Honor, respectfully. Well, if we thought that it wasn't substantively unreasonable, if 480 months is not substantively unreasonable and you affirm on one of the enhancements, then it would be harmless error. Well, I don't think so, Your Honor. And that goes back to my argument as an independent matter. This sentence is substantively unreasonable. Considering the fact, even if every enhancement were affirmed, that is reason enough to render this sentence substantively unreasonable. For the reason that all of the conduct that would otherwise justify moving 187 months up from 293 months was already considered in the calculation of the guideline in a contested hearing. So if the points were awarded, in other words, the justification for the guideline is existent. The sentencing commission... Can I see what you argued as what the sentence should be? What was your number? 240. So half. So half. And I guess as a final thought, and this is sort of a vagrant thought here, but I mean just in terms of predictability here, to move from the top end of that range 15 years beyond it puts us in a very difficult position here. There's not sufficient justification given that all of the enhancements were awarded. The record speaks to the enhancements. There's nothing beyond that is what I want to emphasize. There's nothing beyond that. Okay. Why don't you save the balance of your time for rebuttal then? Thank you. Thank you. Good morning. Good morning. May it please the court, counsel. I'm Cindy Peterson from the District of Montana, and I represent the government today. It's a long time. Forty years. It is a long time. All right, 480 months. It is, Your Honor, but absolutely justified by the record in this particular case as we've laid out in the brief. Well, now, what is your best authority for the proposition that Nielsen's juvenile delinquency adjudication is a sex offense conviction under sentencing guideline 4B1.58? Our best argument, Your Honor, goes to the fact that the commission did not include any limiting language when it defined what they meant by sex offense conviction. When you look through 4B1.58 and B, it's clear that A is to be directed towards adjudicated conduct and B is to be directed towards unadjudicated conduct. Well, except for the guidelines, it seems like when they want to, they can say certain things, like aren't the guidelines clear when they want to count juvenile offenses and sentencing enhancements? For example, compare Section 4A1.2D, computing criminal history based in part on juvenile sentences, with our Section 4B1.5, which says nothing about juveniles. I think that's correct, Judge, in that they are clear in terms of what they want, and that's exactly what I would argue is that if they only intended to include adult, they would have said only adult, like they did when they were discussing the career offender guidelines under 4B1.1. Here, when you go to the definition, it says any, and our argument is that when it says any, it specifically means to include any, adult as well as juvenile. Now, do we care about what Montana law says about juvenile adjudications, where they say no adjudication upon the status of any youth in the jurisdiction of the court shall be deemed a criminal conviction? No, Your Honor. I don't think that definition makes the difference in this particular case, and the reason that I don't is, number one, that goes toward definitions as it relates to Montana law, nothing to do with the guidelines or federal law or anything like that, but primarily the distinction is whether or not it's adjudicated or not adjudicated. And when you look, the cases that counsel cited — You don't have a case exactly on point, right? I do not. The one case that I was going to bring to the Court's attention is actually a Second Circuit case that was not cited by either party. It's United States v. Phillips, and it's 431-Fed 3rd at 86. Well, if you could submit to the court and opposing counsel that citation, please. Yes, I can, Your Honor. Again, it's Phillips 431-Fed 3rd, 86, Second Circuit, 2005, and I would be happy to submit something in writing as well if you would like. But what does that say? Well, it's not directly on point, Your Honor. It discusses 4B1.5, and that's why I wanted to bring that to the Court's attention. What that particular court did, they were dealing with juvenile conduct, and they were applying it to 4B1.5. Their ultimate holding is that the juvenile conduct is considered under 4B1.5b, whether it's adjudicated or not. So what that court went on to do was to find that it was clearly relevant to be considered under sub B, but what was hard in the record is it didn't look like it was actually adjudicated, that he had ever been charged with anything which is different than what we have here. Well, now, okay, I asked counsel for appellant whether he conceded that Nielsen qualifies as a repeat sex offender under 4B1.5b. He seemed to, it wasn't 100%, but he seemed to say that probably would apply. Since there isn't a, if the court were to uphold the particularly vulnerable, the vulnerable section, does the court need to reach 4B1.5a? Yes, and I apologize. I didn't mean to cut you off, but no, Your Honor, that's harmless error, and that's, in fact, one of the issues that the government addresses at the end, but that I was going to bring up is the court doesn't even actually have to get to this issue because it is absolutely considered under B. The conviction, whether or not it's conviction, adjudication, it's plainly relevant under B, and the guideline range does not change. Now, what Mr. Nielsen argues is that the fact that the criminal history number is different is error, and enough error to send it back, but that's not what the case says that he cites. The difference is whether or not the guideline range changes, and in this particular case, if the vulnerable victim enhancement is applied and we go underneath B, the guideline range is not an error. The court would have had exactly the same guideline range. They would have had everything would have been the same in terms of the calculated guideline range and what the court ultimately concluded was a relevant sentence, so it would have been harmless. All right. Let me ask a question on the vulnerable victim issue since your time is. What do you do with the case of United States v. Williams, a Ninth Circuit case? It was cited in the briefs at 291-53rd. There we had a drug-addicted teenage runaway, and the court said basically that this is typical of the victims that the Mann Act was passed to cover and therefore held that the victim was not a vulnerable victim in that case. The district court made no finding of unusual vulnerability beyond her status as a drug-addicted teenage runaway. The same way to say that the enhancements covered and all the purpose of the Mann Act was to cover people like this, including teenagers, and that the enhancements would cover it I suppose you're saying that this victim was especially vulnerable. Do you have any response to that case? Your Honor, I'm sorry I'm actually drawing a blank right now in terms of Williams, but the only thing that I would say is I would reference the court opinion that you actually wrote, Your Honor, which was right, that directed towards whether or not a person that was under the age of 12, where age was very clearly a factor, where the enhancement was because of the age, and whether or not that person could be unusually vulnerable. And you stated in that opinion that you could because it is not, age is not the per se sole factor that makes the decision in those particular things, in those particular cases or in those particular enhancements. Well, I agree with that opinion, but I'm asking the question now. Well, the only thing that I would fall back on, Your Honor, is I think that the record sufficiently supports and details why this particular victim was unusually vulnerable, and it wasn't just because of age. It was because of everything else that she was faced with, and that's what the court. But she is the target prey. She is. Because you can't be a very good predator if you pick people that have bodyguards, kids that are really well adjusted and have very watchful parents and would be missed 20 minutes after they were out of range. I mean, you pick kids that come from broken homes. You pick kids that have a drug problem. You know, you pick someone that isn't going to be quite as offended by the, you know, that she's already probably traded her body for sex as far as. So she is, you know, he's a good predator by picking her because she's less likely to report, yeah, her parents found her, but if they hadn't found her right away, maybe she never would have even called anyone. Maybe no one would have ever even believed her because she's not even probably a very good witness because she was loaded most of the time. Judge Callahan, I think that you hit our argument exactly in terms of what we're trying to argue. I think that Mr. Nielsen goes to great lengths to try to attack her character, and my response to that is it's all of those factors that make her unusually vulnerable because that's exactly right. She is just sitting there and is available to people like Mr. Nielsen who are ready to. . . But she's already had sex with older men, so, you know, maybe it's not as traumatic for her as some, you know, 12-year-old that's never been touched by anyone and it's, you know, more of a, you know, a forcible type of situation as far as that goes. I mean, I don't know. I'm just making all the counterarguments. Those aren't the factors that the district court relied on in applying the enhancement, are they? No, it's not, Your Honor. The factors that the court relied on are actually set out in excerpts of Record 81 through 82, and he went through many different items in terms of finding that she was unusually vulnerable, and I can see . . . A lot of them, you know, to me don't make a lot of sense. Well, Your Honor . . . For instance, that she was destitute. And I guess in terms of that . . . Well, what does that mean? I mean, most 12-year-olds are destitute if you want to, you know, apply a strict definition, right? So what does that mean? It doesn't mean she makes her different from other 12-year-old victims, does it? I think that when you go back into and consider the actions that she was willing to take and the judgment that she was willing to make, it shows . . . Wait a minute. I'm talking about the factors the district court relied on in applying the enhancement. But that's why I referenced the destitute portion of it, Your Honor, because the fact that she would cross into another state penniless to go toward a known sex offender to engage in this shows that she's unusually vulnerable. That's not what the district court relied on, but, you know, but that would be true of every 12-year-old because they're all destitute. Well, destitute in that they don't have their own funds? Well, what are the definitions there of destitute? Well, I think that . . . Because you have money means I'm not destitute? I think that when the court used that in terms of one of the factors, it's not to be narrowed out all by itself either. It's supposed to be considered in the totality. I'm just taking it as an example of, you know, some of the findings that the district court made that really don't make this 12-year-old a particularly vulnerable victim. I mean, a lot of victims are in that category. That's all I'm saying. All I would argue, Your Honor, is that the standard of review here is clear error, and when you look at all of the factors that the court laid out and considered, as well as all of the factors that were in the PSR, that I don't believe that there was clear error in the factual finding that this victim was more vulnerable than your average. The problem I have with that is that the factors that he indicated he took care of, it seemed to me, with the enhancements. He gave all of them. It bumped up from something under 200 to 240, and on page 81 of the excerpt of the record, the district court judge said, I think it would not be error to say that this young woman was not a vulnerable, unusually vulnerable victim. On the other hand, in Wayne, all of the proof, I think it is more likely that she is an unusually vulnerable person. But each thing he referred to, he had enhanced already. Well, Your Honor, there was the aspects that related to her personal characteristics, related to fighting with her parents, being from a broken home, things of that nature, those were not taken into account. The drugs, I don't believe, were taken into account. The fact that Mr. Nielsen knew that the victim was interested in marijuana, which he had, I don't believe that was at all. That's my recollection, Your Honor. And again, I think that this was a close call for the court. You can read that right in the transcript. But at the end of the day, the question is really, did he clearly err? And when you review all of the facts and review his finding, I don't believe that he clearly erred. Thank you. Thank you. Thank you. I appreciate the extra time. I think it's yours. You have that. He has no time? I actually have no time. Okay. Well, we'll give you a minute. Okay. Thank you. I wasn't really trying to be nice, but now that I fell into that trap, we'll give you a minute. How's that? Well, the only thing I'd like to emphasize before I sit down, and I won't take the whole minute, is if you look at the wording, addendum to the blue brief at page 2, do not apply subsection B, and compare it with the wording at addendum page 13 in subpart Big B, undue influence in determining whether B2B applies, you can see that the Sensing Commission basically conflates the youngster's behavior, his behavior, and brings them together and essentially marries those enhancements together. Now, whether you say it was appropriate to give both, he should have only given one, under the guideline itself for the vulnerability or the undue influence, it doesn't really matter to me. I don't mean to say that actually that way. It matters a lot. I want those two points back. But what I am trying to emphasize is that even if both enhancements were awarded, that's even sometimes a stronger reason to think about this sentence, because then all of the conduct was taken into account in awarding the enhancements. Thank you. Thank you both for your argument. This matter will stand submitted.
judges: Nelson, Tashima, Callahan